UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 2:16-cr-166-PPS |
| LAJUAN FITZPATRICK, | ) | |
| Defendant. | ) | |

## OPINION

On November 1, 2019, I issued an Order [DE 89] granting Defendant Lajuan Fitzpatrick's Motion *in Limine*, in part, and denied the Government's Motion *in Limine*. The primary issue is whether the Government could seek to admit evidence relating to Fitzpatrick's flight from police at the time of his arrest and obtain a jury instruction that evidence of flight could be considered as consciousness of guilt. In order to allow the parties to promptly prepare for trial, I issued that Order and indicated a written opinion would follow. This is that opinion.

### Background

Lajuan Fitzpatrick is charged with Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. § 841(a)(1) and with using a firearm during and in relation to that conspiracy in violation of 18 U.S.C. § 924(c). [DE 1.] Because the incident in question is alleged to have resulted in the murder of Rolando Correa, Fitzpatrick faces a life sentence under 18 U.S.C. § 924(j).

Rolando Correa was murdered on December 2, 2013. Nearly three years later, on

November 18, 2016, a sealed arrest warrant for Fitzpatrick was issued out of the Northern District of Indiana. [DE 64.] On November 22, 2016, police attempted to execute the arrest warrant in this case. They proceeded to the home of one of Fitzpatrick's relatives in Hammond, Indiana, but he was not there. Police spoke with Fitzpatrick's relatives and let them know there was a warrant for his arrest. Coincidentally—and apparently unbeknownst to the United States Attorney's Office for this district until approximately a week ago—a search warrant out of the Central District of Illinois was executed on a home in Danville, Illinois that same day. [DE 87.] That home was owned by Fitzpatrick's brother's girlfriend. Fitzpatrick had been staying there but he was not present when the warrant was executed. [*Id.*] It is unclear from the briefing exactly how the search in Danville related to this case. But I have to assume that since the U.S. Attorney in this district was unaware of it at the time, it was unrelated the investigation that resulted in this case.

On December 1, 2016, the Government held a press conference in which the arrest warrant for Fitzpatrick was unsealed. [DE 64.] Defendant disputes whether this event should be called a "press conference" at all, given that there was no national, state or local media present or which ran the story. Likewise, Fitzpatrick notes that the press release concerning the warrant for his arrest received, at best, very modest attention on Facebook. [DE 74.] In any event, it occurred on December 1, 2016, and in connection with it, law enforcement displayed a photograph of Fitzpatrick.

A year went by and the police were unable to locate Fitzpatrick. But on

November 26, 2017, in a bit of luck for the police, they attempted a traffic stop of a White Cadillac for failure to display a license plate. [DE 64.] This also occurred in Danville, Illinois. The car did not stop when the police tried to pull it over for the minor traffic infraction, and instead went down an alley before the driver exited the vehicle and entered a nearby building. Police obtained a search warrant for the building and found Fitzpatrick inside, although Fitzpatrick refused to identify himself by name at the time of his arrest. At the time of Fitzpatrick's arrest, he had two additional state warrants for his arrest out of Lake County, Indiana and Vermillion County, Illinois. [*Id.*] The Government does not appear to contest Fitzpatrick's assertion that at the time of his arrest he was aware of the Vermillion County warrant for failure to appear for a court date.

## Discussion

In the Seventh Circuit, any discussion of the admission of "evidence of flight" as probative evidence begins with the principles laid down in *United States v. Jackson*, 572 F.2d 646 (7th Cir. 1978). In that case, the Seventh Circuit adopted the reasoning of the Fifth Circuit in *United States v. Myers*, 550 F.2d 1036 (5th Cir. 1977) and held that "the probative value of flight as circumstantial evidence of guilt depends on the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilty of the crime charged." *Jackson*, 572 F.2d at

639; *see also United States v. Russell*, 662 F.3d 831, 850 (7th Cir. 2011) (reiterating the same standard for the admission of evidence of flight as consciousness of guilt). If those inferences cannot be drawn, then the evidence should not be admitted "[b]ecause the probative value of flight evidence is often slight" and "there is a danger that a flight instruction will isolate and give undue weight to such evidence." *United States v. Williams*, 33 F3d 876, 879 (7th Cir. 1994).

Likewise, it should be noted that the Supreme Court cast suspicion on the probative value of such evidence long ago. *Wong Sun v. United States*, 371 U.S. 471, 483, n.10 (1963) ("we have consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime").

Here, the arrest and flight took place nearly four years after the crime in question was committed and nearly a year after Fitzpatrick's arrest warrant was unsealed. That's much longer than the three and a half months between the crime and the arrest in *Jackson*. 572 F.2d at 640. And the court in *Jackson* held that allowing the jury to consider the flight as evidence was improper. "As the interval between the crime charged and the flight expands, evidence of the defendant's knowledge that he is being sought for the crime becomes an increasingly important factor." *Id.*

Thus, I must look at whether there is evidence that Fitzpatrick had knowledge that he was being pursued for the crime at issue—the home invasion murder that took place in December 2013. The evidence is thin. First, there is the "press conference," which appears to have had a modestly sized audience. And second, there are the two

warrants executed on homes occupied by Fitzpatrick's relatives. The Government asks that I infer that because police executed warrants at two locations, "[i]t stretches the bounds of credulity to believe that Defendant could have remained unaware that there was a federal warrant for his arrest." [DE 87 at 2.] I disagree. For starters, as I noted above, it is unclear whether the warrant that was executed in Danville had anything to do with this case. And if it didn't, then no inference from that incident can be drawn about Fitzpatrick's knowledge of the warrant *in this case*.

In all events, there is simply no evidence that any family member ever communicated anything about the warrants to Fitzpatrick. As Fitzpatrick says, "no internet browser history, no intercepted communication, no social media, no text message[s] or recorded communication[s] which indicate the defendant" knew what happened or was told about either the warrants or the press release. [DE 74 at 2.] Is it possible they spoke with Fitzpatrick? Of course, it is possible. Is it probable they spoke with Fitzpatrick? That's a closer call. Is there any actual evidence that Fitzpatrick's family told him about the warrants? No, there isn't. And that is the determinative fact for me.

Nothing in *United States v. Brown*, 744 F.3d 474 (7th Cir. 2011), a case relied on by the Government, requires a different conclusion. In *Brown*, less than a week lapsed between the execution of a search and the evidence of the defendant's flight. 744 F.3d at 479. In this case, the time between the execution of the warrants at the relative's homes and Fitzpatrick's arrest was more than eleven months. Furthermore, Fitzpatrick had

two other outstanding state warrants for his arrest, including the one from Vermillion County (where he was arrested), which he knew about at the time of his arrest. Finally, I'm not blind to the fact that many individuals simply have an aversion to the police, whether that aversion is well founded or not. They flee even when they're not wanted for anything. I cannot make the leap that in each of these cases such individuals automatically have a consciousness of guilt. They could be fleeing for altogether different reasons. This all cuts against the Government.

"[I]f the inference of guilt to be drawn from flight is to have any validity, 'the trial court should assure itself that some evidence exists regarding an accusation of the specific crime charged before instructing the jury that flight may be considered in its determination of guilt.'" *Jackson*, 472 F.2d at 641 (quoting *United States v. White*, 488 F.2d 660, 662 (8th Cir. 1973). I cannot assure myself of that here, and as a result, I will exclude evidence of Fitzpatrick's flight from police on November 26, 2017 as probative of his guilt and not provide any such instruction to the jury. There was simply too much time between the crime, the issuance of the arrest warrant and Fitzpatrick's purported flight. What's more, he was wanted for other offenses for which he was aware of, and his flight might have been related to those offenses. And above all, there is no evidence that Fitzpatrick was even aware of the federal warrant for his arrest beyond that notice was provided to his relatives.

### Conclusion

As noted, I've already excluded the evidence of Fitzpatrick's flight. [DE 89.] The

point here is to explain the reasoning behind that decision. In addition, to the evidence regarding his purported flight, Fitzpatrick also sought to bar the introduction of evidence pursuant to Federal Rule of Evidence 404(b) which was not disclosed prior to trial and "all hearsay statements." As stated in my Order of November 1, 2019, these non-specific evidentiary issues will be dealt with as they arise during trial, if at all.

SO ORDERED on November 7, 2019.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT